340 Pa. Superior Ct. 285 (1985)
489 A.2d 1381
CHARTIERS VALLEY SCHOOL DISTRICT and Township of Scott, Appellants,
v.
VIRGINIA MANSIONS APARTMENTS, INC., Elias J. Hakim, Jr. and Janet R. Hakim, husband and wife, Robert O. Lampl, Trustee of Sunland Properties Trust, Appellees.
Supreme Court of Pennsylvania.
Argued July 12, 1984.
Filed March 15, 1985.
*289 Thomas J. Dempsey, Pittsburgh, for appellants.
Benjamin B. Wechsler, Jr., Pittsburgh, for appellees.
Before ROWLEY, TAMILIA and HESTER, JJ.

OPINION OF THE COURT
ROWLEY, Judge:
This appeal stems from a long-standing challenge to the tax assessment of improved real estate in Scott Township, Allegheny County. Plaintiff-appellants, Chartiers Valley School District ("District") and the Township of Scott ("Township"), filed a Complaint in Equity against defendants-appellees, Virginia Mansions Apartments Inc., ("Corporation"), Elias and Janet Hakim, and Robert O. Lampl, as trustee of Sunland Properties Trust, at various times the record owners of the subject property. Appellants requested the imposition of a constructive trust on the property, the rescission of conveyances of portions of the property, and the issuance of an injunction enjoining further transfers. Before us, appellants question the trial court's order sustaining defendants-appellees' preliminary objections and dismissing the complaint with prejudice. The trial court's order also struck the lis pendens indexed against the property. Specifically, appellants contend, the court erred in dismissing the complaint which, they argue, alleged fraud by the appellees in their attempt to avoid the payment of real estate taxes. After affording careful consideration to appellants' arguments, we affirm.

*290 HISTORY OF THE CASE
In February of 1974, the parties agreed that the 1975 assessment of the property owned by the Corporation would be set at $1,500,000.00. This stipulation acknowledged by appellee Elias Hakim, Jr., president and controlling stockholder of Virginia Mansions Apartments, Inc., received judicial approval on February 22, 1974 and was filed. Nonetheless, the Corporation appealed the 1975 assessment to the Board of Property Assessment, Appeals and Review of Allegheny County ("the Board"). The Board reduced the assessment to $1,000,000.00. Seeking to enforce the settlement agreement as set forth in the stipulation, the District filed an appeal to the Court of Common Pleas of Allegheny County, at No. G.D. 75-17450. Declaring the Board's reduction of the 1975 assessment null and void, the Honorable Michael J. O'Malley reinstated the 1975 assessment of $1,500,000.00 as agreed to in the stipulation. Judge O'Malley's order, dated January 23, 1976, was affirmed on appeal to the Commonwealth Court. Scott Township Tax Assessment Case, 31 Pa.Commw. 505, 377 A.2d 826 (1977).
The Board also set the assessment for 1976 at $1,000,000.00. On April 4, 1978, Judge O'Malley remanded the case to the Board to determine the proper assessment for the triennial period beginning in 1976.[1] Holding that the District had abandoned its claim, the Board, on remand, refused to alter the assessment. Consequently, on July 21, 1978, the District appealed the Board's decision for 1976-1978 *291 to the Court of Common Pleas.[2] Although the Corporation moved to quash the appeal, the Honorable Joseph Del Sole, by order dated September 14, 1979, directed that the question of the appropriate assessment for the years 1976, 1977 and 1978 be listed for trial. On June 20, 1980, the Commonwealth Court affirmed the trial court's order, on the basis of Judge Del Sole's unpublished opinion. Virginia Mansions Apartments, Inc., Appeal, 52 Pa.Commw. 262, 415 A.2d 963 (1980). After initially granting allocatur, the Supreme Court, on July 2, 1981, dismissed Virginia Mansions' appeal as improvidently granted. Chartiers Valley School District v. Board of Property Assessment, Appeals and Review, 494 Pa. 315, 431 A.2d 277 (1981).

THE COMPLAINT IN EQUITY
Pending re-evaluation, at trial, of the assessment for the years 1976 through 1979, the Complaint in Equity around which this appeal revolves was filed.[3] Acknowledging that the Corporation had paid the real estate taxes due for these years, based on the Board's assessment of $1,000,000.00, the District and Township sought therein to protect their interest in any additional taxes that would be owed as a result of an increase in the assessed value of the property.[4]
In support of the request for equitable relief, appellants averred that on August 1, 1979,[5] the Corporation conveyed *292 to appellees, Elias and Janet Hakim, husband and wife, that part of the subject property upon which a restaurant had been erected. Although the assessed value of that parcel of real estate exceeded $88,000.00, the stated consideration for the transaction was $5,000.00. In addition, by agreement dated September 1, 1979, the Sunland Properties Trust was created. Funded initially with $20,000.00 from the Hakims, the trust was established for the benefit of five-named children of the Hakims. Appellee Robert O. Lampl, counsel for the Hakims, was named as trustee.[6] On December 1, 1979, the Complaint alleged, the remainder of the subject property, assessed at $911,500.00, was conveyed to Lampl as trustee of the Sunland Properties Trust for $1.00, rendering the Corporation insolvent. That same day the Corporation was dissolved. The apartments held by the trust were subsequently converted into condominiums, and the leases and rents therefrom were assigned to Equibank, to secure payment of notes totalling $7,150,000.00 that had been issued to Lampl as trustee.
Maintaining that Elias Hakim, Jr., controls Lampl's actions with respect to the real property conveyed to him as trustee by the Corporation, and that the Hakim family continues to have the beneficial use and enjoyment of the subject properties, the District and Township averred that the conveyances of the property and the creation of the trust were fraudulent, in that they were designed to place the corporate assets beyond the reach of its creditors, including plaintiffs-appellants. Thus, the municipalities contended, equitable intervention was necessary to safeguard their potential interest in additional tax revenues. Accordingly, plaintiffs-appellants requested that the conveyances to the Hakims and to Lampl as trustee be set aside, that any further transfers of the property be enjoined, and that a constructive trust upon all properties previously *293 known as Virginia Mansions and now held by Hakim or Lampl as trustee be imposed.[7]
On June 16, 1982, defendants-appellees filed preliminary objections in the nature of a demurrer. Alleging that the sole purpose of the plaintiffs' action was the collection of taxes that had not yet been assessed, defendants argued that plaintiffs should be denied the equitable relief sought, given that adequate legal remedies were available under the taxing statutes and the Pennsylvania Business Corporation Law. 15 P.S. § 1001 et seq. Concomitantly, defendants requested that the lis pendens indexed against the property be stricken. Plaintiffs responded with preliminary objections, contending that defendants' preliminary objections should be stricken for lack of conformity to law and rule of court. Following oral argument, the trial court, on August 27, 1982, sustained defendants' preliminary objections and dismissed the Complaint with prejudice. This appeal followed.

APPLICABLE PRINCIPLES OF LAW
A preliminary objection in the nature of a demurrer admits all well-pleaded facts, as well as all reasonable inferences therefrom, and may not be sustained unless it is clear on the face of the pleading that the law will not permit the recovery sought. Aiken v. Radnor Tp. Bd. of Sup'rs., 83 Pa.Commw. 190, 476 A.2d 1383 (1984). Thus, any doubt as to whether such an objection should be sustained must be resolved against the moving party. DeSantis v. Swigart, 296 Pa.Super. 283, 442 A.2d 770 (1982). In granting defendants' preliminary objections, the Honorable Emil Narick concluded that, in reality, this was a tax collection action. As such, plaintiffs were required to pursue the legal remedies available, absent a demonstration of their inadequacy, which was not made here. We agree.
Although the remedies requested by appellants are equitable in nature, the underlying action is a legal one. Plaintiffs-appellants sought the preservation of assets from *294 which to satisfy their potential tax claim. Thus, this case is analogous to Derry Twp. v. S. Dist. v. Barnett C. Co., 332 Pa. 174, 2 A.2d 758 (1938). There the Derry Township School District requested, inter alia, that the taxpayer be permanently restrained from removing any buildings or equipment remaining on the subject property. As the Court noted,
Although a decree based on this prayer would not expressly order the payment of taxes, it is clearly an essential step in the process of collection. The suit is directed toward rendering the property amenable to the reach of the taxing authorities. As such, it must be regarded as a proceeding to collect taxes.

Id., 332 Pa. at 178, 2 A.2d at 760.[8]
Pennsylvania law is clear: actions relating to the collection of taxes are statutory in nature. As Mr. Justice Brown stated in Schmuck v. Hartman, 222 Pa. 190, 70 A. 1091 (1908):
All taxation is statutory, and while it is the duty of every citizen to bear his just proportion of the burden of supporting national, state and local government, he cannot be compelled to do so, except in a way provided by a statute. Liability to pay taxes arises from no contractual relation between the taxable and the taxing power, and cannot be enforced by common-law proceedings unless a statute so provides.

Id., 222 Pa. at 195, 70 A. at 1092.
See also Urban Redev. Condemnation Case, 406 Pa. 6, 178 A.2d 149 (1961); Morrow Estate, 390 Pa. 422, 135 A.2d 913 (1957); Derry, supra. As such, equitable relief will be appropriate only where the statutory remedy is inadequate. Significantly, the adequacy of the legal remedy is not *295 measured by the success or failure of a legal claim. Rather, in deciding whether a remedy is adequate, it is the remedy itself, and not its possible lack of success, that is the determining factor. Willing v. Mazzocone, 482 Pa. 377, 393 A.2d 1155 (1978); Ragano v. Rigot, 25 Pa.Commw. 428, 360 A.2d 779 (1976). The fact that the statutory remedy may not be successful in realizing the fruits of a recovery at law, on account of the defendants' insolvency, is not, of itself, a basis for equitable intervention. Willing, supra; Derry, supra. Thus, the mere fact that the collection of any additional taxes may be more difficult here, or that the taxpayer will be judgment proof, as alleged, does not warrant equitable intervention.
Appellants here attempted to resort to equity without first exhausting statutorily prescribed remedies, which would have adequately protected their interest in the payment of the potential tax bill, if timely followed.

STATUTORY REMEDIES
Chapter 25 of Pennsylvania's General Municipal Law, 53 P.S. § 7101 et seq, is addressed to municipal claims and liens. 53 P.S. § 7101 et seq. As defined therein, "municipality" encompasses townships and school districts, such as appellants. Within this context, the word "taxes" refers to any county, city, borough, incorporated town, township, school, bridge, road or poor taxes. 53 P.S. § 7101. While the term "tax claim" thus refers to the claim filed to recover taxes, 53 P.S. § 7101, the phrase "municipal claim" has been statutorily defined as
(1) the claim arising out of, or resulting from, a tax assessed, service supplied, work done, or improvement authorized and undertaken, by a municipality, although the amount thereof be not at the time definitely ascertained by the authority authorized to determine the same, and a lien therefor be not filed, but becomes filable within the period and in the manner herein provided, (2) the claim filed to recover for the grading guttering, macadamizing, or otherwise improving, the *296 cartways of any public highway; for grading, curbing, recurbing, paving, repaving, constructing, or repairing the footways thereof; for laying water pipes, gas pipes, culverts, sewers, branch sewers, or sewer connections therein; for assessments for benefits in the opening, widening or vacation thereof; or in the changing of watercourses or the construction of sewers through private lands; or in highways of townships of the first class; or in the acquisition of sewers and drains constructed and owned by individuals and corporations, and of rights in and to use the same; for the removal of nuisances; or for water rates, lighting rates, or sewer rates, and (3) the claim filed to recover for work, material, and services rendered or furnished in the construction, improvement, maintenance, and operation of a project or projects of a body politic or corporate created as a Municipal Authority pursuant to law.
53 P.S. § 7101 (Emphasis added.) Governing the filing of municipal claims, section 7143 of the Act provides, in relevant part,
Claims for taxes . . . must be filed in the court of common pleas of the county in which the property is situated . . . All such claims shall be filed on or before the last day of the third calendar year after that in which the taxes . . . are first payable. . . .
* * * * * *
A number of years' taxes . . . if payable to the same plaintiff may be included in one claim. Municipal claims shall likewise be filed within said period, where any appeal is taken from the assessment for the recovery of which such municipal claim is filed. In such case the lien filed shall be in the form hereinafter provided, except that it shall set forth the amount of the claim as an undetermined amount, the amount thereof to be determined by the appeal taken from the assessment upon which such municipal claim is based, pending in a certain court (referring to the court and proceeding where such appeal is pending.) Upon the filing of such municipal claim, the *297 claim shall be indexed by the prothonotary upon the judgment index and upon the locality index of the court, and the amount of the claim set forth therein as an undetermined amount . . .
* * * * * *
When the final judgment is obtained upon such appeal, the court in which said municipal claim is pending shall, upon the petition of any interested party, make an order fixing the undetermined amount claimed in such a claim at the amount determined by the final judgment upon said appeal . . . Proceedings upon said municipal claim thereafter shall be as in other cases.
Where, on final judgment upon said appeal, it appears that no amount is due upon the assessment for the recovery of which such claim is filed, the court in which such municipal claim is pending shall, upon the petition of any interested party, make an order striking such municipal claim from the record . . .
53 P.S. § 7143. Significantly, the statute refers to the municipal claim, once filed, as a lien.
The procedures for taking assessment appeals are not found in the General Municipal Law, but rather, in the General County Assessment Law, 72 P.S. § 5020-101 et seq. As indicated there, any owner of real estate in this Commonwealth, who feels aggrieved by the last or any future assessment or valuation of his real estate, may appeal from the Board's decision. 72 P.S. § 5020-518.1. Taxing bodies are afforded the same appeal rights as the statute accords to taxpayers. 72 P.S. § 5020-520; Appeal of Chartiers Valley School District, 79 Pa.Commw. 69, 469 A.2d 324 (1983). Thus, the appeals referred to in 53 P.S. § 7143 may be appeals taken by municipalities, as well as by taxpayers.
The Legislature is not presumed to have intended provisions of its enactments as mere surplusage. Masland v. Bachman, 473 Pa. 280, 374 A.2d 517 (1977); Habecker v. Nationwide Ins. Co., 299 Pa.Super. 463, 445 A.2d 1222 (1982). In construing statutory language then, courts must *298 assume that the Legislature intended that every word would have effect. 1 Pa.Cons.Stat. § 1922; Commonwealth v. Driscoll, 485 Pa. 99, 401 A.2d 312 (1979). Thus, we conclude that appellants' "expectancy of additional tax revenues" falls within the definition of a municipal claim set forth in 53 P.S. § 7101.
The extent of appellants' interests, if any, arising from the assessment of the subject property for real estate tax purposes, has not been "definitely ascertained by the authority authorized" to do so. Although initially the amount of taxes owed for the years in question was calculable, based on the assessed value of $1,000,000.00, Judge O'Malley remanded the question of the appropriate assessment for these years to the Board, in light of the $1,500,000.00 assessment as stipulated to for 1975. When the Board refused to alter the earlier assessment, appellants appealed to the Court of Common Pleas, pursuant to 72 P.S. §§ 5020-518.1 and 5020-520. Moreover, the emphasized language in the statutory definition could well be rendered meaningless were we not to conclude that the municipalities' anticipated claim for additional revenue fell within its scope. In situations where the amount of taxes owed has been ascertained, the taxing authority may file a "tax claim." In light of the definition of "municipal claim" in question, "tax claim" does not entail a claim for taxes in an amount as yet undetermined; otherwise this reference within the definition of "municipal claim" would be superfluous. Similarly, the scope of the underlined language is not limited by the definition's subsequent references to claims resulting from the provision of services, improvements of highways and sewer systems, maintenance of Municipal Authorities, etc. Section 7101 indicates that "municipal claim" includes both[9] of the subjects thereafter delineated, thereby distinguishing between the several types of municipal claims. In addition, the language under scrutiny here is *299 unnecessary to the protection of a municipality's interest in these other forms of municipal claims, given the detail used in specifically defining these other types of claims. Furthermore, the definition does not limit the kinds of taxes referred to by the phrase "arising out of, or resulting from, a tax assessed" to any particular kind of tax assessed, e.g., real property tax, transit tax. Finally, although no lien has been filed here,[10] the municipalities' claim "has become filable," as mandated by the statutory language. As noted above, a municipal claim may be filed
where any appeal is taken from the assessment for the recovery of which such municipal claim is filed . . . [I]t shall set forth the amount of the claim as an undetermined amount, the amount thereof to be determined by the appeal upon which such municipal claim is based, pending in a certain court (referring to the court and proceeding where such appeal is pending.)
53 P.S. § 7143.
Inclusion of the emphasized language in section 7101 within this legislative scheme signals, then, the General Assembly's intent to afford a taxing body protection of its interest pending resolution of the dispute over the amount of taxes owed; by virtue of 53 P.S. § 7143, a municipality need not await a decision in its favor in the Court of Common Pleas to file a "municipal claim."
The tax years at issue in the municipalities' assessment appeal here began with the year 1976. Given that appellants' interest in additional tax revenues, though contingent, may be characterized as a "municipal claim" under 53 P.S. § 7101, appellants had until December 31, 1979 to file a claim for any additional sum appellees would owe as a result of an increased assessment for 1976, and so forth for the subsequent years. 53 P.S. § 7143. The Court of Common Pleas acquired jurisdiction over the 1976 assessment dispute at least as early as July 21, 1978, the date of the District's appeal to that tribunal following the Board's *300 failure to increase the assessment for 1976.[11] On that date, more than one full year before the allegedly fraudulent conveyances, appellants could have filed a municipal claim in an undetermined amount. By doing so, appellants could have protected themselves against subsequent purchasers of the subject property, whether or not the conveyances were fraudulent.
Moreover, by virtue of 53 P.S. § 7432, appellants could have safeguarded their interests, notwithstanding further transfers of the subject property by appellees. In pertinent part, this provision states
Whenever, heretofore or hereafter, any . . . township, school district . . . has failed to file in the office of the prothonotary of the county, any tax claim or municipal claim assessed against any property within the time limit required by law for such filing, whereby the lien of such tax or municipal claim is lost; . . . then, in any such case heretofore or hereafter occurring, any such . . . township, school district . . . may, at any time after the effective date of this act, file such tax or municipal claim . . . and such claim . . . so entered . . . shall be a valid claim . . . and be a lien upon the real estate upon which it was a lien at the time the claim was filed . . .: Provided, that the lien of any such claim . . . shall not reattach against any real estate transferred to any purchaser before such claim is filed or during the time when the lien of any such tax or municipal claim . . . is lost, nor shall the lien of any such claim . . . impair or affect the priority because of the lien of any mortgage or other lien which gained priority because of the failure of the township, school district . . . to file such claim.
53 P.S. § 7432.[12] *301 Because this is a statutory lien, no judgment need be obtained; perfection can be accomplished merely by filing the lien. See In re Wilson, 25 B.R. 61 (Bankr.W.D.Pa. 1982).
As enunciated in Sanft v. Boro. of West Grove, 63 Pa.Commw. 366, 437 A.2d 1332 (1981), sections 7143 and 7432 together establish a three-year limitation period for the filing of municipal claims, while allowing a municipality which has failed to file within that time to file later, but with protection for interests which attached while the lien of the municipal claim was lost by reason of the municipality's failure to file timely. Id., 63 Pa.Commw. at 369, 437 A.2d at 1334. Therefore, the public's interest in the municipality's receipt of payment of its claims is preserved, as are the rights of intervening purchasors and lienors.[13]
Thus, because appellants had adequate statutory remedies available to them, we conclude that Judge Narick properly granted appellees' preliminary objections and dismissed the Complaint in Equity with prejudice. Contra Zerbe Twp. Sch. Dist. v. Thomas, 353 Pa. 162, 44 A.2d 566 (1945) (Equitable intervention appropriate to prevent waste where tax collection proceedings had terminated.)
Relying on section 5511.21(b) of the Local Tax Collection Law, 72 P.S. § 5511.1- .42, appellants contend, however, that an equitable action is statutorily authorized. That provision states that
In addition to all other remedies provided by this act, each taxing district shall have power to collect unpaid taxes *302 from the persons owing such taxes by suit in assumpsit or other appropriate remedy.

72 P.S. § 5511.21(b) (Emphasis added.)
Appellants, however, misconstrue this provision. For purposes of the Local Tax Collection Law, the term "taxes" includes all taxes levied and assessed by taxing districts. 72 P.S. § 5511.2. As appellants concede, the tax bill assessed to date here has been completely satisfied; no unpaid taxes remain. Moreover, there is no suggestion that any other form of municipal claim, such as a claim for an undetermined amount of taxes, would trigger application of section 5511.21(b). Accordingly, appellants' argument here too must fail.

ALLEGATIONS OF FRAUD
Alternatively, appellants contend that equitable intervention is appropriate here, given that fraud has been alleged with specificity, and equity always has jurisdiction where fraud is involved. Here appellant distinguishes Derry Township, supra, relying instead on Witmer's Appeal, 45 Pa. 455, 461 (1863), which was discussed in Derry:
The plaintiff relies on the case of Witmer's Appeal, 45 Pa. 455, in an effort to sustain equity jurisdiction on the ground of fraud. That decision has no application to the facts in this case. There the defendant admitted that he had detached parts of the machinery for the purpose of enabling certain of his creditors to obtain a preference. Proof of collusion was clearly established. Moreover, the act was done with the express intention of rendering the mill incapable of being operated as a going concern. In the present case there are no facts on which a charge of fraud could be sustained.
In the instant case, the pleadings contain, arguably, "facts on which a charge of fraud could be sustained." The Complaint includes averments of fraud in the transfers of the Virginia Mansions property, to a trust established for the benefit of the corporate president-majority stockholder's children, and to the president and his wife as tenants by the *303 entireties, for less than fair consideration and in the face of the outstanding tax dispute with appellants. These allegations do not, however, speak to the municipalities' failure to take advantage of their available statutory remedies. In fact, the Complaint notes that each of the deeds conveying the subject property were duly recorded on the date of the conveyances. As such, appellants are charged with constructive notice of the conveyances on August 1, 1979, and December 1, 1979, respectively, long after the assessment dispute began. Section 7143 provided appellants with an adequate statutory remedy; the fraudulent conduct alleged here is not cited as the cause of appellants' failure to timely pursue the statutory avenues available. Accord, Pivirotto v. Starusko, 64 Pa.Commw. 346, 440 A.2d 637 (1982).

CONCLUSION
Given that statutory remedies are preferred over those found at common law, 1 Pa.Cons.Stat. § 1504; Pechner, Dorfman, etc. v. Pa. Ins. Dept., 499 Pa. 139, 452 A.2d 230 (1982), equity will not act to save litigants from their failure to statutorily protect their interests, where the statutory remedy is adequate to prevent the harm. For example, in First Federal Savings & Loan v. Swift, 457 Pa. 206, 321 A.2d 895 (1974), First Federal, as mortgagee, instituted an equitable proceeding to set aside a judicial tax sale, on the basis of its own unilateral mistake. Although the chancellor set aside the sale, the Supreme Court, per Justice Roberts, reversed, noting that the rights of the parties were specifically established by the Real Estate Tax Sale Law.
The statute provides several protections for a mortgagee. Notice must be given, and here it was. A mortgagee, as a "lien creditor of the owner," may stay the sale by entering into an agreement with the tax bureau for the payment of back taxes. First Federal negotiated no such agreement. Prior to sale, "any lien creditor" may redeem the property. First Federal did not. . . . Finally, a mortgagee may bid for and purchase premises on which it holds a mortgage. Despite actual notice, First Federal did not appear or bid at the judicial sale. The record *304 reveals that First Federal failed to avail itself of any of the ample opportunities to protect its interest . . .

Id., 457 Pa. at 211-212, 321 A.2d at 897-898. (Footnotes omitted.)
Thus, concluding that First Federal was not entitled to the relief sought, the majority observed that
[C]ourts of equity will not relieve a party from the consequences of an error due to his own ignorance or carelessness when there are available means which would have enabled him to avoid the mistake if reasonable care had been exercised.

Id., 457 Pa. at 213, 321 A.2d at 898. (Citations omitted.)
Accordingly, in light of the foregoing, the order sustaining appellees' preliminary objections, dismissing the Complaint with prejudice, and striking the lis pendens indexed against the subject property in the instant case is affirmed.
NOTES
[1] As the Commonwealth Court noted in Virginia Mansions Apts., Inc. Appeal, 52 Pa.Commw. 262, 415 A.2d 963 (1980), the XXXX-XX-XX triennial assessment at issue here was made by the assessors in late 1975, before Judge O'Malley's decision in the 1975 case. Judge O'Malley thereby acquired jurisdiction over the XXXX-XX-XX triennial appeal, by virtue of 72 P.S. § 5452.11, applicable to taxing bodies, 72 P.S. § 5020-520, which provides that a tax assessment appeal pending before the court will be treated as an appeal for any triennial assessment made before determination of the original appeal by the court. Similarly, because resolution by the Court of Common Pleas of the question of the assessment for the triennial period beginning in 1976 had not been achieved as of May 25, 1982, the date on which the Complaint in Equity was filed, the trial court had jurisdiction over the assessment for the subsequent years as well.
[2] Throughout, the municipalities' request for an increase in the assessment has been premised on (1) the agreed-upon assessed value of $1,500,000.00 for 1975, and (2) the alleged appreciation in value of the property since 1974, by reason of improvements made to it, and the general increase in real estate values.
[3] We have been advised that the trial court has determined the appropriate assessment for these years, and that an appeal from that determination has been taken to the Commonwealth Court.
[4] The Complaint in Equity speaks of $250,000.00 in taxes that would be owed as a result of an increase, if the value of the properties for these years is assessed at $1,500,000.00.
[5] The Complaint at one point alleges that this conveyance was made on August 1, 1979, and at another point, indicates that the transferral occurred on September 1, 1979. The exact date is not, however, relevant to our disposition here.
[6] The Sunland Properties Trust Agreement was recorded on December 28, 1979.
[7] Apparently some of the condominium units have since been sold, as opposed to merely leased.
[8] Some factual dissimilarities exist between Derry and the instant case. In Derry, the real estate tax bill had not been paid. As such, the taxing authority requested an order directing payment of the unpaid school taxes, and permanently restraining the coal company from removing any buildings or mine equipment still remaining on its property. Nonetheless, we do not view this distinction as dispositive in the instant case, with regard to the request for equitable relief.
[9] By Act of April 30, 1929, P.L. 902 § 1, the definition of municipal claim relevant here was added to the statute as originally phrased, Act of May 16, 1923, P.L. 207 § 1. Apparently the word "both" here was carried over from the original enactment.
[10] We assume that no municipal claim has been filed here, given the commencement of this action in equity.
[11] The pleadings in the instant case are incomplete with regard to the exact date that the question of the 1976 assessment was before the Court of Common Pleas. But see, n. 1, infra. In any case, our decision to err in favor of appellants on this question does not influence the analysis here.
[12] 53 P.S. § 7391 contains a similar provision. Nonetheless, we refer here to section 7432 given that § 7391, promulgated on April 4, 1957, permits the filing of a municipal claim "within six months after its effective date."
[13] Appellees will not be heard to complain that the municipalities' interest is too indefinite to be characterized as a "municipal claim" under 53 P.S. § 7101. In arguing that appellants have an adequate remedy at law, appellees, within their brief, contend that appellants could have utilized the protections of section 7143 vis-a-vis the filing of municipal claims.