891 F.2d 474
 19 Bankr.Ct.Dec. 1783, Bankr. L. Rep. P 73,187
 Lester & Frances McLEAN, Debtors-Appellees,
v.
CITY OF PHILADELPHIA, WATER REVENUE BUREAU, Appellant.
Wilson AIKENS, Debtor-Appellee,
v.
CITY OF PHILADELPHIA, WATER REVENUE BUREAU, Appellant.
 Nos. 89-1496, 89-1497.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 30, 1989.
Decided Dec. 7, 1989.
 
 Seymour Kurland, City Solicitor, Andrew P. Bralow, Chief Deputy City Solicitor, Cynthia E. White (argued), Abby L. Pozefsky, Deputy City Solicitors, Philadelphia, Pa., for appellants.
 Eric L. Frank, Community Legal Services, Inc., Philadelphia, Pa., for debtors-appellees Lester & Frances McLean.
 Alan M. White (argued), Community Legal Services, Inc., Philadelphia, Pa., for debtor-appellee Wilson Aikens.
 Before GIBBONS, Chief Judge, MANSMANN, Circuit Judge, and GERRY,* District Judge.
 OPINION OF THE COURT
 GIBBONS, Chief Judge:
 
 
 1
 The City of Philadelphia, Water Revenue Bureau, appeals from judgments entered in two separate bankruptcy proceedings; Wilson Aikens, Debtor, Bankruptcy No. 87-00364S and Lester and Frances McLean, Debtors, Bankruptcy No. 88-11567F. In both cases the City filed a proof of claim against the debtors for municipal liens that had arisen under Pennsylvania law against real property of the debtors because they failed to pay their water and sewage bills. In adversary proceedings the debtors sought to avoid those liens, asserting, as authorized by 11 U.S.C.A. § 522(h) (West Supp.1989), the right of a trustee in bankruptcy to avoid liens which would be unperfected against a hypothetical bona fide purchaser at the time the petition was filed. 11 U.S.C.A. §§ 544, 545. The debtors contended that because the City had failed to index the liens in compliance with Pa.Stat.Ann. tit. 53, § 7106 (Purdon 1972), a bona fide purchaser of their properties would be protected, and the liens thus could be avoided. The Bankruptcy Court so ruled, and on appeal to the District Court the orders avoiding the liens were affirmed. The City appeals from the district court judgment in the consolidated cases 100 B.R. 729. We will affirm.
 
 
 2
 * The facts are not disputed. The City records most of its liens in a system of books and indices maintained in the Prothonotary's Office, located in Room 262 at City Hall. The Prothonotary maintains two indices: the judgment index and the locality index. The judgment index is the main set of lien books, and is organized alphabetically according to the names of the responsible property owners. The locality index lists most of the City's municipal and mechanic's liens, but is organized according to the street addresses of the properties to which the liens have been attached.
 
 
 3
 The City does not, however, record its water and sewage liens in either of these two sets of books. Rather, the Prothonotary receives from the Water Department every year a "water lien book" in which the Department lists all obligations that arise under its jurisdiction. The Prothonotary does not transcribe the information contained in these books into the other indices, but instead "dockets" the books merely by accepting them and filing them in the same physical form in which they are received. The information in these books, as in the locality index, is organized not by the name of the property owner, but by the street address of the property encumbered by the lien, as well as by an account number assigned to each lien by the Water Department.
 
 
 4
 In conducting a water lien search, it is nearly impossible to rely solely on these water lien books. The water lien volumes are organized yearly, so that each volume lists only those properties as to which a lien has been attached within that year. If these books were the only source through which it was possible to discover outstanding liens, one would have to search through potentially many dozens of books in order to conduct a comprehensive and reliable search. For this reason, the Prothonotary makes available to the public a computer terminal that is connected to the accounting records of the Water Revenue Bureau. Through this terminal, it is possible to determine merely by entering the name of the property owner or the property's address whether a particular property is encumbered by a water lien, and if so in what years those liens arose. A searcher aware of the year in which the City attached a particular lien may then refer to the appropriate yearly volume in the water lien books to discover the nature and extent of that lien.
 
 
 5
 At the time that the debtors filed their bankruptcy petitions, the City apparently thought that this combination of computer terminals and water lien books was sufficient to satisfy the requirement under state law that it identify all of its liens in a "judgment index." Pa.Stat.Ann. tit. 53, § 7106 (Purdon 1972). As a result, the City's liens against the debtors in this case were never recorded in the main "judgment" and "locality" indices maintained by the Prothonotary. Nonetheless, the City at that time had failed to notify the public that it kept records of water liens in the water lien books. The City had also neglected to notify the public of the fact that these books were kept in a separate room than that in which the Prothonotary maintained the "Judgment Index." Finally, no notice had been posted indicating that the computer terminals constituted part of the indexing system.
 
 II
 
 6
 The Bankruptcy Code permits a debtor to stand in the position of a trustee and claim certain protections that trustees are typically empowered to assert. 11 U.S.C.A. § 522(h) (West Supp.1989). Among these protections is a trustee's power to avoid any liens that, according to state law, have not been properly perfected by the time the debtor has commenced the bankruptcy proceeding. This avoidance power is created by 11 U.S.C.A. § 544(a)(3), which reads:
 
 
 7
 The trustee ... may avoid ... any obligation incurred by the debtor that is voidable by ... a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
 
 
 8
 Thus the Bankruptcy Code permits a trustee (and, through section 522(h), a debtor) to avoid an obligation if it can be shown that the obligation would not have bound a bona fide purchaser at the time the debtor commenced her bankruptcy action. See In re Washburn & Roberts, Inc., 795 F.2d 870 (9th Cir.1986). The debtors in the Bankruptcy and District Courts have successfully argued that the liens claimed by the City would not have been enforceable against a bona fide purchaser of their property, because the City failed to index the liens in accordance with state law. The central question on appeal, then, is whether the City's system of filing and indexing its water and sewage liens complied with state law standards governing the docketing of municipal liens.
 
 
 9
 There is no question, of course, that the City is permitted under Pennsylvania law to assess liens against a property when an owner neglects to pay for services the City has rendered. See Pa.Stat.Ann. tit. 53, §§ 7101-7107 (Purdon 1972). Charges for water and sewage services are among those that, if unpaid, may be attached as liens. Id. In order for such liens to take effect in a municipality of the first class, however, the municipality must docket the lien properly. According to section 7106 of the Pennsylvania Municipal Claims and Lien Law:
 
 
 10
 [A municipal claim] shall be a lien only against the said property after the lien has been docketed by the prothonotary. The docketing of the lien shall be given the effect of a judgment against the said property only with respect to which the claim is filed as a lien. The prothonotary shall enter the claim in the judgment index.
 
 
 11
 Pa.Stat.Ann. tit. 53, § 7106(b) (emphasis added).
 
 
 12
 When a municipality fails to index a lien that has been assessed against a particular property, a bona fide purchaser of that property takes title free and clear of any such unindexed obligation. See, e.g., Apollo v. Clepper, 44 Pa.Super. 396 (1910) (bona fide purchaser not obligated by unregistered liens, where state law clearly requires such liens to be recorded in the locality index). A bona fide purchaser is relieved not only of liens that go entirely unrecorded, but also of liens that have been defectively indexed. See Prouty v. Marshall, 225 Pa. 570, 74 A. 550 (1909) (bona fide purchaser not obligated by lien registered under the wrong first name of the property owner); Arch Street Building & Loan Ass'n. v. Sook, 104 Pa.Super. 269, 158 A. 595 (1931) (bona fide purchaser not obligated by lien where index omitted the property owner's middle initial).
 
 
 13
 In this case, the question is not whether the City failed to record the liens at all, but whether the system it used to record the liens satisfied the requirement under section 7106 that the liens be docketed in the "judgment index." In the recent case of Ransom v. Marrazzo, 848 F.2d 398 (3d Cir.1988), this court implicitly answered this question. In that case, the City attempted to enforce against various occupants a number of water and sewer liens that arose because the previous occupants had failed to pay their bills. These occupants challenged the City's actions in part because the City's indexing system for water liens did not satisfy section 7106. Although we eventually upheld the validity of the liens, the court clearly indicated that the indexing system was invalid. We, in fact, took for granted that the City's indexing system was insufficient:
 
 
 14
 As the plaintiffs' affidavit confirms, and the defendants' affidavits do not deny, the liens are not entered in the judgment index of the prothonotary, but rather in a separate lien index.
 
 
 15
 The question then becomes how the city's failure to perfect the liens, by properly indexing them, renders them invalid.
 
 
 16
 Ransom, 848 F.2d at 405 (emphasis added). We upheld the liens, however, on grounds that do not apply in this case. In Ransom we surmounted the section 7106 problem by looking to section 7432 of the same Act, which permits the City to refile any of its liens at any time except as against "any real estate transferred to any purchaser before such claim is filed or during the time when the lien of any such tax or municipal claim or judgment was lost." Pa.Stat.Ann. tit. 53, § 7432 (Purdon 1972); see Ransom, 848 F.2d at 405. The plain effect of this provision is to forgive a municipality's failure to docket or file its liens, but only if ownership of the property has not changed hands. Ransom, 848 F.2d at 406-07.[1] Section 7432 thus permitted the City to rectify the indexing error and seek payment on the otherwise valid liens. In the present case, by contrast, it is impossible to avoid the section 7106 problem in the same way. The question we are required to ask by section 544(a)(3) of the Bankruptcy Code is whether the lien in question would have obligated a bona fide purchaser at the time the debtor filed for bankruptcy. By definition, then, the City is prevented from seeking refuge under section 7432, since, as we have seen, that provision does not permit a municipality to correct its indexing errors if title to the property in question has been transferred to a bona fide purchaser.
 
 III
 
 17
 The City has never entered the debtors' liens in the volume it has labeled as the "Judgment Index." The fact that the City might have thought that the water lien books counted as part of the judgment index is insufficient, in itself, to satisfy section 7106. Indeed, at the time the debtors commenced their bankruptcy actions, a reasonably intelligent searcher would have had little chance of discovering any of the water liens involved in this case. The thrust of a search would quite naturally have been through the volumes labeled by the City as the "Judgment Index" and the "Locality Index." The City failed, however, to post any signs indicating that these indices were incomplete--that is, that these indices excluded water and sewage liens, which could only be discovered by looking through a physically separate set of books stored in a completely different room than that in which the judgment index was located. Nor had the City posted any signs indicating that one could use the computer terminals to discover water and sewage liens. Any reasonably diligent purchaser would therefore have ceased the lien search upon completion of a perusal of the "Judgment" and "Locality" indices and would have had no apparent reason to search out the water lien books, the existence of which had never sufficiently been made a matter of public knowledge.
 
 
 18
 On appeal, the City raises three challenges to this reasoning. First, the City argues that apart from any failure on the City's part to record these liens in the judgment index, the fact that these liens were recorded in the water lien books placed the debtors on "constructive notice." The City supports this argument with McCannon v. Marston, 679 F.2d 13 (3d Cir.1982), in which this court upheld the validity of an obligation against a trustee claiming protection, as here, under section 544. In that case, the obligation upheld by the court was an equitable interest in the estate's real property that was held by an individual who was in possession of the property and who, under state law, had by that possession placed the trustee on constructive notice of her interest. Although it is true, as the City claims, that the decision in McCannon embraced a theory of constructive notice, it did so only as a function of its duty under section 544 to apply state law. See McCannon, 679 F.2d at 15-16. In that case, constructive notice preserved the obligation only because state law said it did: a purchaser of real property is considered in Pennsylvania to be on notice of an equitable interest held by a person who is in clear and open possession of that property. Id. In this case, however, state law provides no such argument for the City. Under Pennsylvania law, constructive notice is synonymous with whether the lien has been properly indexed: the state's indexing laws, in other words, define those circumstances under which a bona fide purchaser may be deemed to be on constructive notice of a lien. See, e.g., Site Improvements, Inc. v. Central and Western Chester County Indus. Dev. Auth., 293 Pa.Super. 1, 437 A.2d 960 (1981); Demharter v. First Fed. Sav. & Loan Assoc'n of Pittsburgh, 412 Pa. 142, 194 A.2d 214 (1963); Russeck v. Shapiro, 170 Pa.Super. 89, 84 A.2d 514 (1951). In particular, section 7106 requires municipal liens to be indexed by the Prothonotary before they can be made enforceable against a bona fide purchaser.
 
 
 19
 The City also argues that the liens in this case are salvageable thorough 11 U.S.C.A. § 546 (West Supp.1989). That provision subjects any trustee who seeks to avoid an obligation under section 544 to "any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." Asserting section 546, the City argues that section 7143 of the Municipal Claims and Lien Law permits it to correct any indexing errors, since that provision establishes a three year window of opportunity in which a municipality may file its lien claims. According to section 7143, municipal claims must be "filed on or before the last day of the third calendar year after that in which the taxes or rates are first payable." Pa.Stat.Ann. tit. 53, § 7143 (Purdon Supp.1989). Because this three year period has not yet lapsed, the City argues, it is free to redocket any of the liens involved in this case.
 
 
 20
 This argument mistakenly conflates the requirement of "filing" with that of "docketing." The latter, as we have noted above, relates to the City's obligation to set forth its liens in its public records for the purpose of making these liens a matter of public knowledge. Section 7143, on the other hand, deals not with the Prothonotary's docketing duties, but acts as a statute of limitations that applies to actions to recover on outstanding liens. See Chartiers Valley School Dist. v. Virginia Mansions Apts., 340 Pa.Super. 285, 489 A.2d 1381, 1390 (1985); Sanft v. Borough of West Grove, 63 Pa.Cmwlth. 366, 437 A.2d 1332 (1981). Indeed, section 7143 by its own terms confirms this distinction. In the third paragraph of the provision, it states: "[u]pon the filing of such municipal claim, the claim shall be indexed by the prothonotary upon the judgment index and upon the locality index of the court." Pa.Stat.Ann. tit. 53, section 7143 (Purdon Supp.1989). In this way, section 7143 treats the requirement of docketing to be independent of the additional requirement that a claim for a lien be brought within three years: both are necessary; neither alone is sufficient.
 
 
 21
 This difference is further clarified by section 7432. That provision eliminates the three-year limitations period set forth by section 7143 as it applies to municipal liens, thus allowing a municipality to seek payment on municipal liens virtually at any time after they have been created. See Upper Gwynedd Twp. Auth. v. Roth, 113 Pa.Cmwlth. 239, 536 A.2d 875, 877 (1988). Section 7432 does not, however, relieve the Prothonotary of the obligation to properly docket the City's liens. To the contrary, it specifically prohibits the filing of any municipal claim "against any real estate transferred to any purchaser before such claim is filed." Pa.Stat.Ann. tit. 53, § 7432 (Purdon 1972). Under the City's argument, a bona fide purchaser of property would be vulnerable to a municipal lien even though the City has never made any attempt to docket the lien in the judgment index, as is explicitly required by section 7106. The Pennsylvania legislature cannot have meant section 7106 to be read in this way.
 
 
 22
 Finally, the City argues that even if its indexing system was invalid, it is still entitled to payment on the liens under 11 U.S.C.A. § 550(d) (West Supp.1989), which permits a good faith transferee who has improved the debtor's property to recover costs incurred from such improvement. See In re Black & White Cattle Co., 783 F.2d 1454 (9th Cir.1986). As the District Court correctly points out, this argument would permit reimposition of otherwise avoidable liens in virtually every conceivable case, since it will almost always be possible for a municipality to show that an unindexed lien "improved" the property. The weakness in the City's argument is that it has failed to establish a "transfer" within the meaning of section 550(d). Under state law, as we have seen, a lien cannot be said to arise against a bona fide purchaser until and unless the municipality complies with the docketing requirement of section 7106. As to a lien that has not been properly docketed and filed, then, a municipality cannot be said to be a "transferee." Section 550(d) is thus inapplicable.
 
 IV
 
 23
 While the defect in the indexing system is one which appears to be easily remediable by the Prothonotary, it still existed at the time the Aikens and McLean petitions were filed. Because the City's liens had not then been perfected against bona fide purchasers, section 544(a)(3) permits the trustee, and section 522(h) the debtors, to avoid these liens. The judgment of the District Court affirming the orders of the Bankruptcy Court will therefore be affirmed.
 
 
 
 *
 Hon. John F. Gerry, Chief Judge, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 Of the five plaintiffs in Ransom, two were heirs to the property and one was a mere occupant. Another plaintiff claimed an interest in her property by virtue of her marriage to the owner of record, which, the court noted, was insufficient to qualify her as a purchaser. Although the fifth plaintiff was a "purchaser" within the meaning of the Act, the court found that she had purchased the property before the municipal claims had been levied and hence could not seek refuge under § 7432. Ransom, 848 F.2d at 407